

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-26-2003

# USA v. Clausen

Precedential or Non-Precedential: Non-Precedential

Docket 01-1839

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Clausen" (2003). *2003 Decisions.* Paper 717.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/717

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 01-1839

———————

UNITED STATES OF AMERICA

v.

ADAM BENTLEY CLAUSEN
Adam Clausen,
Appellant

———————

No. 01-1873

———————

UNITED STATES OF AMERICA

v.

KENNETH SCOTT STERNBERG
Kenneth Sternberg,
Appellant

———————

No. 01-1882

———————

UNITED STATES OF AMERICA

v.

JOEL C. CASA
Joel Christopher Casa,
Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. Nos. 00-cr-00291-2, 00-cr-00291-1, and 00-cr-00291-3
District Judge:  The Honorable Robert F. Kelly

———————

Submitted Under Third Circuit LAR 34.1(a)
March 4, 2003

———————

Before: ROTH, BARRY, and FUENTES, Circuit Judges

(Opinion Filed: March 26, 2003)

———————

OPINION

———————

BARRY, Circuit Judge

Between February 7, 2000 and February 26, 2000, on a total of nine occasions, one

or more of the appellants robbed or attempted to rob six businesses in Philadelphia and one

business in New Jersey, all at gunpoint.  Five of the businesses in Philadelphia were owned

and staffed by Korean women and operated as houses of prostitution, health spas, or

massage parlors.  The sixth Philadelphia business was engaged in the scrap metal business

and the business in New Jersey was a restaurant and bar.  On December 12, 2000, following

a jury trial, Joel C. Casa, Adam Bentley Clausen and Kenneth Scott Sternberg, were each

found guilty of one or more counts of conspiracy to commit a Hobbs Act violation, of

Hobbs Act robbery or attempted robbery, and of use of a firearm during and in relation to a

crime of violence.  They now appeal.

2

Appellants argue that the District Court erred when it instructed the jury that the Hobbs Act applies to robberies which have only a de minimis effect on interstate commerce, and argue as well that insufficient evidence was presented at trial to enable a reasonable juror to conclude that each charged robbery had the requisite impact on interstate commerce. They also challenge the admission of various eyewitnesses' identification testimony, and Casa and Sternberg argue that their attorneys were ineffective. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and will affirm.

**I.**

Appellants argue that the District Court erred when it instructed the jury that all it needed to find for purposes of the Hobbs Act was that each robbery had a minimal effect on interstate commerce.[1] Essentially, they argue that the Hobbs Act is unconstitutional as applied to a broad category of cases, including this one, in which the effect of any given robbery on interstate commerce was minimal.

In 1989, we held that the Hobbs Act is constitutional as applied to crimes which have only a de minimis impact on interstate commerce. See United States v. Traitz, 871 F.2d 368, 390 (3d Cir. 1989). Appellants argue that the holding in Traitz is no longer good

---

[1] The Hobbs Act provides that ". . .[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined . . . or imprisoned . . . or both." 18 U.S.C. § 1951(a).

law in light of United States v. Lopez, 514 U.S. 549 (1995), and United States v. Morrison, 529 U.S. 598 (2000), with the import of those cases purportedly being that the Hobbs Act can only be constitutionally applied to crimes which have a substantial effect on interstate commerce.

In Lopez, which involved a challenge to the Gun-Free School Zones Act, the Supreme Court held that there are "three broad categories of activity" that Congress may regulate under the Commerce Clause: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) those activities having a substantial relation to or that substantially affect interstate commerce. The Lopez Court concluded that the possession of a gun in a local school zone, the activity at issue in that case, did not fall into the first or second categories. As a result, Congress was only empowered to regulate that type of gun possession if it had a substantial relation to interstate commerce, which it did not. See also Morrison (crimes of violence motivated by gender lack a substantial relation to interstate commerce).

The Lopez Court distinguished the Gun-Free School Zones Act from a federal gun possession statute, which had an "express jurisdictional element" that limited its "reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." Lopez, 514 U.S. at 562. Like the federal gun possession statute, the Hobbs Act contains a "jurisdictional element" – that is, it only applies to crimes which "obstruct[], delay[], or affect[] commerce or the movement of any article or

4

commodity in commerce."  28 U.S.C. § 1951(a).

Even after <u>Lopez</u>, every Court of Appeals to have addressed the issue has held that the Hobbs Act may constitutionally be applied to crimes which do not have a substantial effect on interstate commerce.  Some of those courts have concluded that Hobbs Act crimes fall into the first and/or second of the three <u>Lopez</u> categories.  Under this formulation, a <u>de</u> <u>minimis</u> effect on commerce is sufficient because the Hobbs Act's jurisdictional element ensures that the Act is only applied to crimes whose impact crosses state lines.  A substantial effect would only be required if the crimes proscribed were purely intrastate.  <u>United States v. Harrington</u>, 108 F.3d 1460, 1467 (D.C. Cir. 1997)(substantial effects test is inapplicable to interstate activities, a category which includes crimes with a concrete effect on interstate commerce); <u>United States v. Castleberry</u>, 116 F.3d 1384, 1387 (11th Cir. 1997)(same);  <u>United States v. Farrish</u>, 122 F.3d 146, 148 (2d Cir. 1997)(same); <u>United States v. Atcheson</u>, 94 F.3d 1237, 1241-1243 (9th Cir. 1996)(same); <u>United States v. Farmer</u>, 73 F.3d 836, 843 (8th Cir. 1996)(<u>Lopez</u> has no applicability to commercial establishments).  <u>See</u> <u>also</u> <u>Morrison</u>, 529 U.S. at 612 ("[A] jurisdictional element may establish that the enactment is in pursuance of Congress' regulation of interstate commerce.").

Other courts have found that Hobbs Act robberies fall into the third <u>Lopez</u> category. Because of the Hobbs Act's jurisdictional element, "[i]t follows with the inexorable logic of the multiplication table that the cumulative result of many Hobbs Act violations is a substantial effect upon interstate commerce," and that substantial effect empowers

5

Congress to regulate pursuant to the Commerce Clause. United States v. Robinson, 119 F. 3d 1205, 1215 (5th Cir. 1997). In any individual case, proof of a de minimis effect on interstate commerce is all that is required. Robinson, 119 F. 3d at 1212 (to the extent that Lopez establishes a substantiality requirement, it applies to the class of cases prosecuted in the aggregate and proof of a slight effect suffices in any individual case); United States v. Smith, 182 F.3d 452, 456 (6th Cir. 1999)(Lopez establishes a substantiality requirement but it applies to the class of cases prosecuted in the aggregate); United States v. Bolton, 68 F.3d 396, 398-399 (10th Cir. 1995)(same); United States. v. Stillo, 57 F.3d 553, 558 n.2 (7th Cir. 1995)(same).

While we have not yet addressed the effect of Lopez and Morrison on the Hobbs Act, we have considered their effect on two other federal criminal statutes, 18 U.S.C. § 922(g)(1), the felon-in-possession statute, and 18 U.S.C. § 844(I), the federal arson statute. See United States v. Williams, 299 F.3d 250, 258 (3d Cir. 2002)(the federal arson statute); United States v. Singletary, 268 F.3d 196, 204 (3d Cir. 2001)(the felon-in-possession statute).

In Singletary, we found that "[t]he jurisdictional element in § 922(g)(1) distinguishes it from the statutes considered in Lopez and Morrison." Singletary, 268 F.3d at 204. Similarly, in Williams, we noted that the federal arson statute requires that the destroyed property have been used in an activity affecting interstate commerce. Williams, 299 F.3d at 258. We found it significant that "[e]ven in the post-Lopez environment the Supreme Court did not interpolate 'substantial' into § 844(i)'s language." Id., at 258. There is no

6

basis for distinguishing the Hobbs Act from the felon-in-possession and arson statutes. All three regulate activity which occurs locally but which has an explicit nexus with interstate commerce, and all three are therefore distinguishable from the statutes at issue in Lopez and Morrison. As a result, the District Court did not err when it instructed the jury that it need only find that each robbery had a minimal effect on interstate commerce.

Appellants argue next that their Hobbs Act convictions should be reversed because the evidence presented with regard to the effect of the robberies on interstate commerce was insufficient. This argument fails because a rational trier of fact could have found the required de minimis nexus to interstate commerce with regard to all of the charged robberies beyond a reasonable doubt.

Turning first to the attempted robbery of Philadelphia Scrap Metal (Counts 7-9, appellant Clausen), Kirke Franz Szawronski, Sr., testified that his business, located in North Philadelphia, is incorporated, that it does its banking at Commerce Bank in Sicklerville, New Jersey, and that it files tax returns. The business purchases metals from Delaware, New Jersey, and Pennsylvania and sells the metals primarily to a company called Garden State, located in New Jersey, which exports metals to China, India and Japan.

As concerns the robbery of Smuggler's Restaurant (Counts 13-15, appellants Casa and Clausen), Stephen Anderson, Sr., the proprietor of the restaurant at the time of the robbery, testified that Smuggler's, located in New Jersey, was an incorporated business with employees from New Jersey and Philadelphia, that it advertised in the Philadelphia Inquirer, and that its customers came from Philadelphia and New Jersey. Mr. Anderson

7

hired bands for the restaurant through an agent in Philadelphia, some of the bands were Philadelphia-based and some New Jersey-based, and he bought food for the restaurant in Philadelphia and alcohol in New Jersey. He also testified that appellants stole approximately $15,000 in business proceeds and that, because of the robbery, business declined and he was forced to sell.

The evidence that the robberies and attempted robberies of the health spas or massage parlors affected or had the potential to affect interstate commerce was also sufficient. Special Agent Michael Parmigiani of the FBI, assigned to the Asian Criminal Enterprise Task Force in Philadelphia, testified that the women who work in those establishments, some as prostitutes and others doing cooking or cleaning, move from state to state. He explained that the women "might work in one massage parlor for a couple of weeks and then, they'll move on to another nearby one or they may have a girlfriend that they came in the country with, that's in another city, maybe they'll go from Texas to New York to Philadelphia. They tend not to stay in the massage parlors very long, a couple of weeks to a couple of months, max." Agent Parmigiani answered in the affirmative when the prosecutor asked him if there was "a fairly-established network for the prostitutes to move from massage parlor to massage parlor" and "from state to state." He also testified that he had interviewed customers from "Pennsylvania, New Jersey, Delaware. We've – a lot of the massage parlors are in and around the Convention Center downtown here in Philadelphia, so we've executed search warrants at places with customers inside, who have been from across the country . . . ." The customers pay in cash and by major credit card and

the massage parlors have credit card accounts with major banks.

The Shogun Spa (Counts 1-6, appellant Clausen) provides a good example of a commercial establishment "in" interstate commerce. Wion Denis, the manager at the time of the robbery, testified that the business was licensed by the City of Philadelphia, advertised in newspapers, took payments in cash and by credit card, and had employees from "Korea, New York and every other place in the United States." The Shanghai Gardens Spa (Counts 10-12, 22-24, appellants Clausen and Sternberg) is another example. Linda Stephens, the proprietor, testified that the business was incorporated, was licensed by the City of Philadelphia, had a checking account, took credit cards, purchased supplies and equipment, and advertised in the yellow pages as well as "[i]n city paper, weekly, Internet." Ms. Stephens also testified that when the spa was robbed for the second time, "we had four guests at the place from LA[.]" The testimony of Ms. Denis and Ms. Stephens in conjunction with that of Agent Parmigiani, was more than sufficient to establish that the robberies of their businesses had a de minimis effect on interstate commerce. So, too, was the very similar testimony concerning the robberies at the Sansom Studio (Counts 16-18, appellant Clausen), the 247 Studio (Counts 19-21, Casa, Clausen and Sternberg) and the Happiness Oriental Health Spa (Counts 25-27, Clausen and Sternberg).

## II.

Appellants' second major argument is that various in-court identifications were tainted by unconstitutionally suggestive out-of-court identifications and that the District

9

Court erred in permitting several witnesses to testify regarding out-of-court identifications. The standard for admitting evidence of a pretrial identification is the same as the standard for permitting an in-court identification in the wake of a pretrial identification. In both cases, the eyewitness testimony will be permitted unless the pretrial identification procedure was so unnecessarily suggestive as to give rise to such a substantial likelihood of irreparable misidentification that admitting the identification testimony would be a denial of due process. United States v. Mathis, 264 F.3d 321, 330 (3d Cir. 2001)(citing United States v. Stevens, 935 F.2d 1380, 1389 (3d Cir. 1991)).

Appellants have not shown that the identification procedure used here was unnecessarily suggestive. Mathis, 264 F.3d at 331 (3d Cir. 2001)(citing United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992), for the proposition that the defendant bears the burden of proof on the issue of the suggestiveness of an out-of-court identification). In a hearing held outside of the presence of the jury, Agent Parmigiani testified that he used the same procedure with all of the witnesses whose testimony appellants challenge on appeal. During his pre-trial preparation of each of those witnesses, he spread out the same six photographs across the table and then said the following: "I'm showing you photographs, they may not be anyone that you recognize or they may be. Do you recognize anyone in these photographs?" There was one photograph each of Clausen and Sternberg, one each of their co-conspirators Kirk Franz Szawronski, Jr. and Isaac Tillman, and two of Casa. At least one of the photographs was marked "FBI 4/26/00 8:54."

While Agent Parmigiani conceded on cross-examination that he had time to prepare

10

an array or a lineup, thereby implying that it was not necessary for him to use the procedure that he used, there was no evidence that the procedure he chose was in any way suggestive. While there were five conspirators in total, all of the challenged in-court identifications were made by witnesses to robberies in which less than all five participated. Thus, each witness was shown an array in which pictures of men accused of committing the robbery were intermingled with pictures of men not thought to have been involved. Moreover, there was no testimony that one of the men stood out from the others and that the array was unnecessarily suggestive for that reason.[2] Even if the procedure used by Agent Parmigiani was suggestive, the District Court found, with regard to each witness who made an in-court identification, that there was an independent basis for the identification such that the fact that the witness was shown a photograph could not be said to be influencing the in-court identification.

Appellants also challenge the testimony of several witnesses who were permitted to describe or at least reference out-of-court identifications. First, after Sun Park was unable to make an in-court identification of one of the robbers she described in her testimony, she was permitted to testify that, on the night that all of the appellants but Casa were apprehended at the Happiness Oriental Health Spa, the police put all of the robbers and all of the customers in handcuffs. Ms. Park testified that she was able to identify one of the men in handcuffs as being the robber she described. Appellant Sternberg challenges Ms.

---

[2] There was testimony regarding the appellants' distinctive tattoos, but appellants do not argue that those tattoos rendered the array unnecessarily suggestive.

11

Park's testimony regarding this out-of-court identification. His challenge fails because there is no evidence that the procedure used was suggestive. What evidence there is suggests that it was fair given that the customers had not been sorted from the robbers at the time that Ms. Park identified the robber. In addition, during the course of the robbery, Ms. Park had sufficient opportunity to observe the man she subsequently identified.

Appellant Sternberg's challenge to the testimony of Linda Stephens is similarly unavailing. Ms. Stephens was driven to the scene the night appellants were apprehended and was asked whether any of the men in the police cars were the men who robbed her. Ms. Stephens recalls identifying three of the men. Like Ms. Park, Ms. Stephens had ample opportunity to observe appellants, who robbed her spa on two separate occasions.

Finally, appellant Sternberg complains that his rights were violated when Benjamin Fox, a customer at the Shanghai Gardens Spa when it was robbed, testified that he had been shown photographs and had identified one of the robbers from the photographs. We disagree. While Mr. Fox testified that he picked co-conspirator Szawronski, Jr. out of an array, he went on to describe appellant Sternberg, without mentioning whether he picked his picture out of the array. Mr. Fox then identified appellant Sternberg in court.

Appellant Clausen challenges the testimony of Thomas Kuhlman. After Mr. Kuhlman failed to identify Clausen as the man who tried to rob Philadelphia Scrap Metal, the District Court permitted him to confirm that he had selected Clausen's picture prior to

trial.[3] Even if appellants had established that the out-of-court identification was impermissibly suggestive, which they have not, the admission of this testimony would be harmless error in light of the fact that Kirke Franz Szawronski, Sr. identified Clausen as the man who robbed him and Kirke Franz Szawronski, Jr. confirmed that he and Clausen attempted to rob Philadelphia Scrap Metal together, with Clausen to grab Szawronski, Sr.'s briefcase and Szawronski, Jr. to drive the getaway car. Szawronski, Jr. also testified that when Clausen got back into the car Clausen explained that he had tried but failed to take Szawronski, Sr.'s briefcase.

### III.

Finally, appellants Casa and Sternberg argue that they were denied the effective assistance of counsel at trial. We do not typically address ineffectiveness arguments on direct appeal, in part because they are often based on facts not contained in the record. See United States v. Tobin, 155 F.3d 636, 643 (3d Cir. 1998). Appellant Sternberg, for example, argues that counsel was ineffective because he pursued a defense which Sternberg instructed him not to pursue, a claim we are unable to evaluate in the absence of factual development. Appellants' arguments are premature and should be raised in 28 U.S.C. § 2255 proceedings.

---

[3] The Court permitted Kuhlman to testify about his out-of-court identification given that between the time of the robbery and the time of trial, Clausen changed his appearance.

13

**IV.**

We have reviewed all of the contentions of appellants and find them to be without

merit.[4]  The judgments of conviction and sentence will be affirmed.

TO THE CLERK OF COURT:

Kindly file the foregoing opinion.

/s/MaryAnne Trump Barry
Circuit Judge

---

[4]Appellants raise numerous contentions beyond those we have specifically addressed.
Sternberg argues, e.g., that he was entitled to a severance and not just that counsel was
ineffective for not asking for one.  Casa and Sternberg argue that the District Court erred in
not sua sponte giving a curative instruction on the difference between robbery and extortion
and not just that their counsel were ineffective for not asking for one.  Additionally, and
among other contentions, certain hearsay objections have been made and certain testimony
is challenged as having been admitted in violation of the notice requirement of Fed. R. Evid.
807.  We have reviewed, and we reject, each claim of error.