

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2007

# USA v. Lynch

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1747

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Lynch" (2007). *2007 Decisions*. Paper 1733.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1733

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-1747

———

UNITED STATES OF AMERICA,


v.

STEVEN ALLEN LYNCH,

Appellant


———

On Appeal from the Judgment of the United States District Court
for the Middle District of Pennsylvania
(D.C. No. Crim. 03-129)
District Judge: Honorable Yvette Kane

———

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2007

Before: SLOVITER, RENDELL, *Circuit Judges*, and IRENAS,[*] *Senior District Judge.*

(Filed:  January 29, 2007)

_____

[*] Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

OPICION

IRENAS, *Senior United States District Judge.*

On May 3, 2004, Steven Allen Lynch entered a conditional plea of guilty to a one-count Information charging him with distribution and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a). This conditional plea permitted Lynch to withdraw his guilty plea if an appeal to this Court challenging the District Court's denial of his motion to suppress identification testimony was successful. On August 16, 2004, a date originally set for sentencing, Lynch moved to withdraw his guilty plea. The District Court adjourned the sentencing and allowed briefing on the issue, and on November 23, 2004, issued an Order denying Lynch's motion. On April 12, 2005, the District Court sentenced Lynch to 151 months imprisonment, a period of supervised release of three years, payment of a $2,000 fine and a $100 special assessment.[1]

On September 26, 2005, Lynch filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel

_____

[1] On May 28, 2003, a Grand Jury returned an indictment charging Lynch with one count of distribution and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a). Lynch filed a motion to suppress identification evidence on October 1, 2003. The District Court held a hearing on October 28, 2003 and issued an Order dated October 30, 2003, denying Lynch's motion. The original indictment was thereafter superceded on February 25, 2004, by a new indictment, which included three additional charges of firearms violations. This superceding indictment was dismissed when Lynch was sentenced on April 12, 2005.

2

due to his attorney's failure to appeal as permitted by the plea agreement. The Government filed a response requesting an evidentiary hearing on the issue on November 28, 2005. On January 6, 2006, the Court appointed James J. West, Esq. to represent Lynch. The Court heard testimony on January 12, 2006 from Greg Abeln, Esq., Lynch's attorney during sentencing,[2] and from Lynch. On February 3, 2006, the District Court granted Defendant's motion, vacated Lynch's sentence, and on February 27, 2006, resentenced him to the same sentence,[3] thus allowing Lynch to file a timely notice of appeal. Lynch filed this appeal on March 9, 2006, in which he challenges the District Court's denial of his motion to suppress identification evidence.

## I.

This Court has jurisdiction to review the judgment of conviction in a criminal case pursuant to 28 U.S.C. § 1291. We review the District Court's decision to exclude identification evidence on the grounds of suggestiveness for abuse of discretion, reviewing the underlying factual findings for clear error and the legal conclusions *de novo. United States v. Mathis,* 264 F. 3d 321, 331 (3d Cir. 2001); *United States v. Emanuele,* 51 F. 3d 1123, 1127 (3d Cir. 1995).

---

[2] Lynch had four attorneys from the time of his indictment on May 28, 2003 to his April 12, 205 sentencing. Mr. Abeln represented Lynch from February 14, 2005 through sentencing.

[3] The judgment of conviction was signed by the District Court on March 1, 2006.

II.

On the night of May 10, 2003, Officer John Fry of the Steelton Borough Police Department, was conducting uniformed patrol in a marked police car. At approximately 10:04 p.m., a silver Buick Park Avenue, with dark-tinting on all windows except the windshield,[4] traveled past Officer Fry's location. (JA 88-90). Officer Fry, noticing the tinting, activated his emergency lights and began to follow the Buick. (JA 89a-90a). He could see from this vantage point that there were two occupants - a driver and a passenger - in the front seat of the vehicle. (JA 90). He trailed the Buick approximately one block into the parking lot of Lawson's Tavern. (JA 90).

As Officer Fry's vehicle followed the Buick into the parking lot, Officer Basonic, who was traveling on the street in the opposite direction as the Buick and Fry's police car, noticed the events that were transpiring and drove into the parking lot to assist. (JA 129). Officer Basonic watched as Lynch, the alleged driver of the Buick, pulled in between two parked cars, as if he were parking. Officer Fry stopped his vehicle. As he emerged, the Buick began to move. Officer Fry got back into his vehicle and drove toward the Buick. When he saw that a parked tow truck was obstructing the egress of the parking lot, however, Officer Fry began to reverse his car.[5] (JA 92-93). At that moment, the Buick

---

[4] Dark-tinted windows violate Pennsylvania Vehicle Code, 75 Pa. C. S. § 4524(d)(1).

[5] The Government contends that Officer Fry backed his car into a position that blocked the egress by an alternative route. Lynch states, however, that "Officer Fry slammed his vehicle into reverse and attempted out get out of the way."

4

turned completely around and collided head-on with the police vehicle. (JA 93). The

Government claims that just before the two cars collided, Officer Fry "got a good look" at

Lynch, making eye contact with him as he drove the Buick into the police car. (JA 93, 95,

96-97). According to Officer Fry, the distance separating him from Lynch was

approximately twenty-five feet, and that lighting conditions were good due to the light

emitted from the vehicles' headlights, the police car's flashing lights, and the lights on

Lawson's Tavern.[6] (JA 95-96).

Immediately thereafter, Lynch exited from the Buick, allegedly glanced at Officer

Basonic,[7] and with the passenger, began to run. (JA 95, 132). According to the

Government, Officer Fry yelled at Lynch to stop and that he was under arrest, but that

Lynch glanced at Officer Fry and continued to run. (JA 95). Officer Basonic then

emerged from his marked police car and a 30-40 second foot chase ensued. Officer

Basonic followed Lynch until Lynch ran around the south side of Lawson's Tavern,

whereupon Officer Basonic ran around the north side in an attempt to intercept him. (JA

130). When Lynch emerged from behind the tavern, he and Basonic were a few feet from

each other and began to run side-by-side.[8] Lynch quickly took the lead. After trailing

---

[6] Lynch contests these statements. He argues that Fry had to opportunity to observe the driver for two seconds, (JA 97a), and that the lighting conditions were poor.

[7] The Government contends that at this time, Lynch was approximately three car lengths from Officer Basonic. (JA 134).

[8] The Government contends that at this point in time, the area was well lighted by the Lawson's Tavern lights and the street lights in front of the building.

5

Lynch for about three blocks, Officer Basonic gave up the chase. (JA 130-31).

While Officer Basonic was running after Lynch, Officer Fry remained with his police vehicle and the Buick. (JA 98). The door to the Buick was open, and Fry testified that he reached inside to turn off the ignition, but was unsuccessful. (JA 98a). He then allegedly called a tow truck to take the Buick to be impounded, returned to the Buick, sat in the drivers' seat, and turned off the car in order to conduct an inventory search in accordance with Steelton Police Department policy. (JA 98a).

Upon entering the car, he noticed that in the open console between the two front seats was, what appeared to be, a quantity of crack cocaine and a large amount of money. Officer Fry promptly exited the vehicle and locked the door. (JA 99a). He immediately called narcotics task force Detective Troy Elhajj, who soon thereafter arrived at the scene. Photographs were taken and the narcotics evidence and money, including a MAC card, were seized. (JA 101a). Detective Elhajj handed the MAC card to Officer Fry, which bore the name of Steven Allen Lynch. (JA 103a, 155a).

The Buick was then loaded onto a rollback truck, towed to an impound lot, and unloaded. (JA 101a). Officer Fry followed the rollback truck. When the Buick was unloaded, he looked through the window on the driver's side rear door and saw a gun lying on the back seat, which appeared to have fallen out of a grocery bag when in transit from the parking lot to the impound lot. (JA 101a-02a). Fry opened the door and seized the gun. (JA 102a).

Some point after the gun was seized and before 12:30 a.m., Detective Elhajj began

6

to prepare a search warrant for the impounded vehicle, but received notice thereafter that the night-duty judge who was needed to issue the warrant was not available. (JA 156a). At 12:30 a.m., however, Lucy Mitchell, Lynch's mother, called the Susquehanna Township Police Department[9] to report a stolen vehicle and to indicate that she believed her son, Steven Allen Lynch, was in possession of the vehicle. (JA 150-153). Mitchell gave the officers consent to search her vehicle. (JA 150-51). When the officers conducted the search later that day, they removed from somewhere near the steering wheel[10] two photographs of "people hanging out," one of whom resembled Lynch. (JA 154, 160, 164). According to their testimony, neither Detective Elhajj nor Officer Fry noticed the photographs the previous night. (JA 111, 155).

That day, Officer Fry received a copy Lynch's drivers license photograph from the Pennsylvania Department of Transportation, and testified that he immediately recognized the photographed man as the driver of the Buick.[11] (JA 103a- 5a). After viewing the photograph, Officer Fry showed the license to Officer Basonic, who also testified to

---

[9] Susquehana Township is a town near Steelton Borough.

[10] Lynch argues that the picture covered the Buick's odometer gauge located behind the steering wheel. The Government contends that the photograph was located in the inset area of the dash to the left of the steering column, partially concealing the tachometer.

[11] The Government argues that due to Officer Fry's twenty years of experience as a police officer, including training in identifying and recalling the identification of individuals, the amount and number of times he saw Fry on the night of the chase, and his description of the driver of the Buick immediately after the incident as a black male with a large build wearing a white t-shirt and black jeans, his testimony is particularly reliable. (JA 88, 105).

immediately recognizing the individual photographed as the driver of the Buick. (JA 132-35, 141). Officer Basonic testified that he again saw Lynch on August 20, 2003, when he transported Lynch to the state preliminary hearing, and that he then recognized the man he was transporting as the driver of the Buick as well. (JA 135a). Officer Fry testified to seeing Lynch as well at this hearing and recognizing him as the Buick's driver. (JA 45, 52).

III.

A court faced with a question about the propriety of an identification procedure must consider whether the procedure was impermissibly suggestive such that there is a "very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384 (1968); *Reese v. Fulcomer*, 946 F.2d 247, 258 (3d Cir. 1991); *United States v. Stevens,* 935 F.2d 1380, 1389 (3d Cir. 1991)(holding that reliability is the "linchpin" in questions of admissibility of identification testimony). A court must look at the "totality of the circumstances" to determine whether, even if the conditions were suggestive, the likelihood of misidentification was such that admission of the identification evidence would amount to a denial of due process. *Stevens,* 935 F.2d at 1389; *United States v. Emanuele,* 51 F.3d 1123, 1128 (3d Cir. 1995). A defendant seeking to exclude identification evidence carries the burden to prove that the identification procedure was unnecessarily suggestive. *United States v. Clausen,* 328 F.3d 708, 713 (3d Cir. 2003); *United States v. Mathis,* 264 F.3d 321, 331(3d Cir. 2001). Factors to be considered are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of

8

the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199-200 (1972).

The District Court denied Lynch's motion to suppress the identification evidence, holding that there was not a substantial likelihood of misidentification under the totality of the circumstances presented. It considered: (1) Officer Fry's observations, as an officer trained in observation, of the suspect during the car chase and head-on collision; (2) Officer Basonic's observations of the suspect as he watched the incident from a distance and during his foot chase; (3) the fact that the testimony and photographs presented demonstrated that the area was sufficiently lighted when the officers made such observations; (4) both officers' testimony that they had no doubt Lynch was the driver of the Buick; and (5) that the officers identified Lynch in fewer than twenty-four hours of the incident.

Lynch's argument that there was substantial likelihood of misidentification is unavailing. He contends that such likelihood existed because Officer Fry provided little information about the suspect other than that he was a "large built" black male wearing a white shirt and black jeans. He also asserts that the officers' failure to identify the man in the picture by the steering wheel as Lynch, their lack of opportunities to observe Lynch, and the insufficient attention they could have devoted to identifying him in the circumstances contributed to a substantial likelihood of misidentification.

Lynch further contends that the four identification procedures at issue, including two single-photograph identifications and two preliminary hearing identifications, were

9

unnecessarily suggestive because Officer Fry showed the picture to Officer Basonic with no photographic spread or line-up,[12] and that the error was compounded through the officers' contact with Lynch during the preliminary hearing.[13]  All of this evidence, however, was before the District Court when it held that despite the possible suggestiveness of the identification, it was nonetheless reliable under the totality of the circumstances.  Because the District Court ruling is supported by the record, we cannot conclude that this was an abuse of discretion.

### IV.

We hold that the District Court did not err in denying Lynch's motion to suppress identification evidence because, under the totality of the circumstances, there was not a "very substantial likelihood of irreparable misidentification."  *Simmons*, 390 U.S. at 384.  There was, therefore, no denial of due process.  The judgment of conviction is hereby affirmed.

---

[12] There is no requirement that a photo spread or line-up be used to identify a suspect. *See, e.g., Manson v. Brathwaite,* 432 U.S. 98, 99-101 (1977) (refusing to exclude identification evidence where the single-photograph identification was made by a police officer who was at the scene of the crime and briefly face-to-face with the suspect on two occasions).

[13]  Such contact consisted of Officer Fry's identification of Lynch at the preliminary hearing and Officer Basconic's transporting him to the hearing.