

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-2007

# USA v. Ladson

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1819

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Ladson" (2007). *2007 Decisions.* Paper 550.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/550

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1819

_____

UNITED STATES OF AMERICA

v.

MALCOLM LADSON,

Appellant.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00697-1)
District Judge: Hon. William H. Yohn, Jr.

_____

Submitted under Third Circuit LAR 34.1(a)
on March 29, 2007

Before: FISHER, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 23, 2007)

_____

O P I N I O N

_____

**ROTH,** <u>Circuit Judge</u>**:**

A jury found Malcolm Ladson guilty of one count of conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a). Ladson now asks us to vacate his conviction and dismiss the indictment based on the government's allegedly intentional and prejudicial pre-indictment delay. Alternatively, Ladson asks us to remand for a new trial based on the jury's consideration of an allegedly suggestive and unreliable identification. Because we find no violation of due process on either of these grounds, we will affirm Ladson's conviction.

## I.   BACKGROUND

On October 28, 1999, four men met in Philadelphia, drove to the Gold Valley Jewelry Store at the Security Square Mall in Woodlawn, Maryland, put on ski masks and gloves and committed a "smash and grab" robbery. The men fled the scene in a white Chevrolet which was later determined to have been stolen. After receiving a call of a robbery in progress, a Baltimore police detective followed the Chevrolet to a secluded area near the mall, where the occupants of the car fled into a wooded area. While fleeing, the men left behind evidence including jewelry from the store, hammers, ski masks, and gloves. Another Baltimore police officer, Isaac Weinstein, had positioned himself on a secluded street adjacent to the wooded area. There, Office Weinstein observed two cars – a white Acura following a dark-colored vehicle – emerge quickly from the area where the Chevrolet had been abandoned. Officer Weinstein unsuccessfully attempted to stop both cars. However, he was able to view the driver of the dark-colored car by shining a bright flashlight on the driver's face for a few

2

seconds at close range. The Acura and its occupants were eventually apprehended, and the driver, David Story, pleaded guilty, cooperated with the government, and testified at Ladson's trial. The dark-colored car and its occupants escaped.

Approximately seven months later, at roll call, Officer Weinstein saw an internal Baltimore police flyer issued in connection with a different "smash and grab" robbery of a jewelry store in Baltimore County. The flyer showed full-face black-and-white photographs of the four suspects in that robbery, including a photograph of Ladson. In text toward the bottom of the flyer, Ladson was mentioned by name as a suspect in the Gold Valley Jewelry Store robbery, but the flyer did not indicate which photo depicted him. When Officer Weinstein saw Ladson's photograph, he immediately recognized him as the driver of the dark-colored car that had fled the scene near the Security Square Mall. Officer Weinstein later identified Ladson at trial and testified that he had "no doubt" that Ladson was the driver he had seen. Officer Weinstein's testimony was corroborated by Story's testimony, including Story's assertion that he and Ladson had met in Philadelphia to discuss plans for robbing jewelry stores in Maryland, and by DNA evidence linking Ladson to one the ski masks found in the woods near the mall.

The police and FBI apparently completed their investigation in July 2001. However, for unknown reasons, the government did not obtain an indictment against Ladson until approximately three years later, on October 28, 2004, one day before the statute of limitations expired. Prior to trial, Ladson filed a motion to dismiss the indictment on the basis of the

3

government's allegedly unconstitutional pre-indictment delay. The District Court held a hearing, found insufficient evidence of intentional delay, and accordingly denied the motion to dismiss. Ladson also filed a motion to suppress Officer Weinstein's identification. The District Court held another hearing, found that the procedures used were not unduly suggestive and that the identification itself was sufficiently reliable, and accordingly denied the motion.

After trial, the District Court considered Ladson's pro se motion to reconsider the denial of his motion to dismiss the indictment. In his pro se motion, Ladson argued, for the first time and without supporting evidence, that his father, who had died on January 4, 2004, could have provided testimony supporting his alibi defense were it not for the government's delay in obtaining an indictment. At the post-trial hearing, the District Court noted that the death of Ladson's father presumably was known to Ladson at the time he filed his motion to dismiss and thus should have been addressed at that time. In light of this fact, the District Court concluded that Ladson's pro se motion sounded in ineffective assistance of counsel – an argument reserved for collateral proceedings pursuant to 28 U.S.C. § 2255 – and therefore the court denied the pro se motion. This timely appeal followed.

## II.     DISCUSSION

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

4

**A. The Government's Pre-Indictment Delay**

With respect to the District Court's denial of Ladson's motion to dismiss the indictment for allegedly unconstitutional delay, we review the court's findings concerning intentional delay and actual prejudice for clear error. *United States v. Ismaili*, 828 F.2d 153, 169 (3d Cir. 1987).

Although the statute of limitations is the "primary guarantee against bringing overly stale criminal charges," *United States v. Marion*, 404 U.S. 307, 322 (1971), it "does not fully define the [defendant's] rights with respect to the events occurring prior to indictment." *Id.* at 324. Regardless of the statute of limitations, a pre-indictment delay can be considered a due process violation warranting dismissal of the indictment if the defendant can prove both "(1) that the government intentionally delayed bringing the indictment in order to gain some advantage over him, and that (2) this intentional delay caused the defendant actual prejudice." *Ismaili*, 828 F.2d at 167 (citing *Marion*, 404 U.S. at 325).

In attempting to prove the first prong, i.e., intentional delay, Ladson first points us to the three-plus years of government inaction between the completion of the investigation and the return of the indictment. Ladson then surmises that it is "obvious" that this delay was intentional and designed to gain a tactical advantage because the prosecution offered no explanation for the delay at the motion to dismiss hearing. This is the entirety of Ladson's argument regarding intent.

5

While it is true that the prosecutor offered no definite explanation, there is nothing in the record to suggest a nefarious purpose on the part of the government. AUSA Thomas Perricone advised the court that he had been first assigned to the case a week before it was indicted, that he had no first-hand knowledge of the history of the case or the reason for the delay, that his understanding was that the people previously assigned to the case did not indict because of other pressing responsibilities, and that the case was reassigned to him in order to secure an indictment before the statute of limitations expired. Ladson responded simply by arguing that the circumstantial evidence, i.e., the three-year delay, was enough by itself to meet his burden of proof regarding intent. The District Court disagreed. We cannot say that the District Court committed clear error in making this factual finding.[1]

## B. Officer Weinstein's Identification

We review the District Court's denial of Ladson's motion to suppress Officer Weinstein's identification testimony for abuse of discretion. *United States v. Mathis*, 264 F.3d 321, 331 (3d Cir. 2001). If the admission of Officer Weinstein's identification violated due process, we consider whether this error was harmless. *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006).

---

[1]In any case, the record reveals that Ladson did not suffer actual prejudice. Ladson's claims at the hearing were entirely speculative, as he failed to identify any specific evidence that had actually become unavailable as a result of the pre-indictment delay. Although Ladson claimed later, in his pro se motion for reconsideration, that his dead father could have provided an alibi defense were it not for the government's delay, the District Court correctly concluded that Ladson had waived this argument as it was available to him at the time he filed his motion to dismiss.

An in-court identification of a defendant tainted by a pre-accusatorial "identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification" is suppressible on due process grounds. *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)). The defendant bears the burden of proof on the issue of impermissible suggestiveness. *United States v. Clausen*, 328 F.3d 708, 713 (3d Cir. 2003). "[S]howing a witness a photographic array can constitute a denial of due process when police attempt to emphasize the photograph of a given suspect, or when the circumstances surrounding the array unduly suggest who an identifying witness should select." *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003) (citing *Simmons v. United States*, 390 U.S. 377, 383 (1968)). The suggestiveness of a photo array is determined by examining the totality of the circumstances. *Lawrence*, 349 F.3d at 115 (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)). With regard to the second prong of the test, concerning the overall reliability of the identification, we consider several factors, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200.

Ladson argues that the procedure underlying Officer Weinstein's identification was unnecessarily and impermissibly suggestive because the police flyer upon which that identification was based mentioned Ladson's name and stated that he was as a suspect in the

7

Gold Valley Jewelry Store robbery. Ladson's argument fails for three reasons. First, the District Court explicitly found that, when Officer Weinstein saw the flyer, he immediately recognized Ladson as the driver of the dark-colored car, and did so prior to seeing Ladson's name listed at the bottom of the flyer in connection with the Gold Valley robbery. Ladson does not challenge this finding and, in any case, it is not clearly erroneous in light of Officer Weinstein's testimony at the suppression hearing, which the District Court found to be credible. Second, even if Officer Weinstein's testimony was not credible, the flyer does not indicate which photograph depicts Ladson. Furthermore, none of the photographs stand out as each is the same size and style and each depicts a heavy-set African-American man in his late twenties or early thirties, which matches the description in the written report Officer Weinstein made after the Security Square Mall incident. Third, as noted by the District Court, we affirmed a similar identification procedure in *United States v. Stevens*, 935 F.2d 1380, 1390 (3d Cir. 1991).

Following our reasoning in *Stevens*, we find no error in the District Court's conclusion that Ladson failed to prove that the police flyer was unnecessarily suggestive, even though the flyer may have had some suggestive attributes.[2] Therefore, the District Court did not

---

[2] Ladson relies heavily on <u>Manson v. Brathwaite</u>, but that case is inapposite as it deals with a witness who was shown a single photograph in the context of and for the express purpose of making a photographic identification of the perpetrator of a particular crime. 432 U.S. at 108. The other cases cited by Ladson are also inapposite and, regardless, are from other circuits and thus not binding on this Court.

abuse its discretion in denying Ladson's motion to suppress.[3]

## III.  **CONCLUSION**

For the foregoing reasons, we will **AFFIRM** the District Court's judgment of conviction.

---

[3]  Even if the identification procedures used in the instant case were unnecessarily suggestive, the record developed at the suppression hearing adequately supports the District Court's conclusion that Officer Weinstein's identification of Ladson was reliable, i.e., there was not a substantial risk of misidentification.  The record demonstrates that Officer Weinstein was able to get a good look at Ladson by shining a powerful police flashlight at his face at very close range for the specific purpose of identifying him later.  Furthermore, Officer Weinstein's identification was corroborated by David Story's testimony and the physical DNA evidence.