NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4362
_____

UNITED STATES OF AMERICA

v.

CARLOS DIAZ
a/k/a Carlos Alberto Martine,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cr-531)
District Judge:  Hon. Timothy J. Savage

_____

Submitted Under Third Circuit LAR 34.1(a)
September 16, 2011

Before:  RENDELL, JORDAN and BARRY, *Circuit Judges*.

(Filed: September 19, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Carlos Diaz was tried and convicted in the United States District Court for the Eastern District of Pennsylvania on charges of conspiracy to interfere with interstate commerce by robbery and interference with interstate commerce by robbery, as well as carrying and using a firearm during a crime of violence. On appeal, he challenges the District Court's rulings on his pre-trial motion to suppress evidence. We will affirm.

## I. Background

The District Court found the following facts after an evidentiary hearing on the suppression motion. At about 9:30 p.m. on October 16, 2008, Keith Prout, an assistant manager of the PJP Marketplace in Philadelphia, closed the store and went outside to discover that his sport utility vehicle had a flat tire. He had begun changing it when two men approached. One jabbed Prout in the ribs with a gun and demanded that he go inside and open the store's safe. When Prout refused, the men pushed him against the back of the vehicle and verbally threatened him. Just then, Philadelphia Police Officer Brian Spearman arrived, and Prout's assailants fled. Officer Spearman chased one of them and saw him throw a gun behind the store. The officer quickly apprehended him, and Prout identified the man as one of the robbers. Prout then got into a police car and was driven around in search of the other man.

Meanwhile, Philadelphia Police Sergeant Jonah Conway responded to a radio call of the disturbance at the PJP Marketplace, which stated that while one suspect was in custody, another, a Hispanic male in blue jeans and a camouflage vest, was at large. Sergeant Conway drove behind the store where the first suspect had thrown the gun, and

2

he saw a Ford Explorer bearing Washington State tags parked illegally on railroad tracks. Sergeant Conway looked in a window of the Explorer and saw duct tape and rubber gloves inside. He then opened the unlocked passenger door, looked in the glove compartment, found no vehicle registration or insurance card, but found traffic citations issued to someone named "Martinez." Sergeant Conway felt the hood of the Explorer and discovered that it was warm. Suspecting that the Explorer was connected to the attempted robbery, he disabled it by puncturing one of its tires.

Sergeant Conway then watched the Explorer from a short distance away, and within a few minutes, a man emerged from the weeds along the railroad tracks, got into the vehicle, and attempted to drive away. Sergeant Conway stopped the Explorer and asked the driver, later identified as Diaz, for his license and registration. Diaz was unable to produce either. Sergeant Conway then asked Diaz what he was doing in the area, and Diaz stated that he had been driving when he noticed that one of the tires was low, so he pulled over and walked to a nearby gas station to call his father. The police officer noticed that during the questioning, Diaz was sweating, out of breath, and very nervous. At that point, the police car in which Prout was riding pulled up, and Prout immediately recognized Diaz, who was still sitting in the driver's seat of the Explorer, as one of the men who had assaulted him. Diaz was taken out of the Explorer and placed in handcuffs, Prout positively identified Diaz in response to a police question, and Diaz was arrested.

A grand jury in the Eastern District of Pennsylvania returned a three-count indictment charging Diaz with conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a); attempted interference with interstate

3

commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and carrying and using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2. Diaz moved to suppress Prout's on-scene identification, arguing that it was unnecessarily suggestive. In the same motion, he sought to suppress his statement to Sergeant Conway regarding why he was in the area, arguing that he was effectively in custody when he gave it, though he had not received Miranda warnings, and that it was the fruit of an illegal seizure. After a hearing, the District Court denied the motion. A jury convicted Diaz on all three counts. Diaz now appeals.

## II.    Discussion[1]

### A.    *The Show-Up*

Diaz contends that Prout's on-scene identification should have been suppressed because the procedure violated his due process rights. He also argues that Prout's subsequent in-court identification during the trial should have been ruled inadmissible, because the in-court identification was tainted by the on-scene identification.

"The standard for admitting evidence of a pretrial identification is the same as the standard for permitting an in-court identification in the wake of a pretrial identification." *United States v. Clausen*, 328 F.3d 708, 713 (3d Cir. 2003). "In both cases, the eyewitness testimony will be permitted unless … admitting the identification testimony

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, which grants to district courts "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." We have jurisdiction under 28 U.S.C. § 1291.

We review a denial of a motion to suppress for clear error as to the underlying facts and conduct plenary review of the District Court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

4

would be a denial of due process." *Id.* (citing *United States v. Mathis*, 264 F.3d 321, 330 (3d Cir. 2001)). "An identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)). "Unnecessary suggestiveness contains two component parts: that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures." *Id.* (internal quotations marks omitted). An unnecessarily suggestive identification procedure does not create a substantial risk of misidentification if it "possesses sufficient aspects of reliability" given the "totality of the circumstances." *Id.* at 139. Factors we consider in that analysis include: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness'[s] degree of attention; (3) the accuracy of the witness'[s] prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)). The burden to show that the suggestiveness of an identification procedure violates due process is borne by the defendant. *See United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003).

Although a show-up procedure, like the one here, is "inherently suggestive," *Brownlee*, 454 F.3d at 138, Diaz has not shown that the identification provided by Prout was the product of an unnecessarily suggestive procedure or that it created a substantial risk of misidentification. Diaz contends that the identification procedure was unduly suggestive because "[d]uring the identification procedure, [he], while in handcuffs, was

5

brought out of a marked police vehicle under the escort of several police officers who stood next to him during the procedure." Appellant's Br. at 5. While that may be true,[2] Prout was able to identify Diaz *before* he was arrested and handcuffed. As the District Court specifically found, "Prout immediately recognized the man in the driver's seat of the Explorer as the heavier one who had assaulted him," and "*[a]fter* Prout recognized him, [Diaz] was taken out of the Explorer and placed in handcuffs." (App. at 10 (emphasis added).) We cannot say that these factual findings by the District Court were clearly erroneous, given Prout's testimony at the suppression hearing.

Even if these findings were clearly erroneous, however, the fact that Diaz was in handcuffs and surrounded by police alone does not make the identification procedure "unnecessarily suggestive." First, if a suspect is handcuffed and surrounded by police officers during an on-scene show-up, the show-up is not automatically unduly suggestive. *See, e.g.*, *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998) ("Necessary incidents of on-the-scene identifications, such as the suspects being handcuffed and in police custody, do not render the identification procedure impermissibly suggestive."); *United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) *cert. denied*, 513 U.S. 862 (1994) ("The fact that the suspects were handcuffed, in the custody of law enforcement officers, and illuminated by flashlights also did not render the pre-trial identification procedure unnecessarily suggestive. In this case, handcuffs, custody, and flashlights were all necessary incidents of an on-the-scene identification … ."); *cf. Brownlee*, 454 F.3d at 138

---

[2] Sergeant Conway testified to this effect at the suppression hearing. *See* App. at 86-88.

(holding that a show-up was unnecessarily suggestive when not only the suspect was "handcuffed, surrounded by police officers, and either seated inside or standing beside a police cruiser" but also multiple witnesses identified the suspect "while exposed to the suggestive influence of other[] [witnesses, bystanders, and police]," the suspect was brought to the scene of the crime for identification, and there was no reason why the witnesses could not identify the suspect in a less suggestive line-up or photo array).

Second, whether an identification procedure is "unnecessarily suggestive" rests not only on its effect, its "suggestiveness," but also on its cause, whether there was "some good reason [(or motivation)] for the failure to resort to [a] less suggestive procedure[]." *Brownlee*, 454 F.3d at 137. Here, Prout's prompt identification of Diaz was done when Prout's memory was still fresh and would have enabled the police to quickly release Diaz if he were not identified as the culprit and to continue their search for the actual criminal. Given the level of suggestiveness of the identification procedure, those motivations were reasonably sufficient to justify the failure to resort to a less suggestive procedure. *See United States v. Sleet*, 54 F.3d 303, 309 (7th Cir. 1995) (holding that immediate show-ups can serve important interests, such as "allow[ing] identification … while the witness'[s] memory is fresh[] and permit[ting] the quick release of innocent persons" (internal quotation marks omitted)); *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972) ("[P]rompt confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent suspect and at the same time … enable[s] the police to resume the search for the fleeing culprit while the trail is fresh.'" (quoting *Bates v. United States*, 405 F.2d 1104, 1106 (D.C. Cir. 1968), *cert. denied*, 406 U.S. 927 (1972)).

Moreover, even if we were to assume that the identification procedure here was unnecessarily suggestive, it was nevertheless sufficiently reliable to not have violated Diaz's due process rights. Prout had ample opportunity to view Diaz at the time of the crime, and he positively identified him shortly after the crime was committed. Thus, given the totality of the circumstances, the identification procedure here did not create a substantial risk of misidentification since it "possess[ed] sufficient aspects of reliability." *See Brownlee*, 454 F.3d at 139-140 (listing factors which establish "sufficient aspects of reliability" and holding that "the totality of the circumstances establish[ed] that the identifications were reliable").

Therefore, because the identification procedure used by the police here did not violate Diaz's due process rights, the District Court did not err in refusing to suppress the on-scene identification of Diaz made by Prout and the identification could not have tainted the in-court identification.

B. *The Terry Stop*

Diaz argues that the District Court should have suppressed Prout's identification and Diaz's statements to Sergeant Conway as fruits of an illegal seizure, because Sergeant Conway lacked reasonable suspicion to stop the Explorer.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000). Reasonable suspicion is "a less demanding standard than probable cause," *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000),

8

and "can be established with information that is different in quantity or content than that required to establish probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). In deciding whether reasonable suspicion supported a stop, "we must consider 'the totality of the circumstances – the whole picture.'" *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

Here, when Sergeant Conway responded to the radio call, he drove behind the PJP Marketplace where the gun had been thrown, found a vehicle with out-of-state plates parked illegally on railroad tracks with its hood still warm, noticed that the majority of the businesses in the area were closed, and saw by looking through the Explorer's window that duct tape and rubber gloves were inside. Given the totality of these circumstances, Sergeant Conway had reasonable suspicion that the Explorer was involved in the assault and attempted robbery that had just happened nearby, and he was thus justified in stopping the vehicle after Diaz emerged from the weeds along the railroad tracks and started driving away.

Diaz argues that Sergeant Conway's warrantless entry into the Explorer was illegal and "therefore tainted the subsequent stop of the vehicle," Appellant's Br. at 11, because the stop was based in part on information obtained during the search of the glove compartment. However, assuming that the warrantless entry into the Explorer was illegal, *cf. United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002) (noting that the "automobile exception . . . permits law enforcement to . . . search an automobile without a warrant [only] if probable cause exists to believe it contains contraband") (internal quotation marks omitted), Sergeant Conway already had, for the reasons already noted,

reasonable suspicion to stop the vehicle before he opened the door of the Explorer and conducted the search. Put another way, the traffic citations found in the glove compartment were effectively immaterial to the reasonable suspicion calculus.

Given that Sergeant Conway had reasonable suspicion to conduct an investigatory stop of the Explorer, the District Court properly refused to suppress the identification and statements that resulted from the stop.

C.    *Diaz's Statements*

Finally, Diaz contends that the District Court should have suppressed his statements to Sergeant Conway because those statements were the fruit of a custodial interrogation conducted without Diaz having been given a *Miranda* warning.

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), "statements obtained during a custodial interrogation are inadmissible under the Fifth Amendment of our Constitution if the defendant was not informed both of the right to counsel and the right to remain silent." *United States v. Shabazz*, 564 F.3d 280, 286 (3d Cir. 2009). "For a person to be in custody when he has not been arrested, 'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so.'" *United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006) (quoting *Steigler v. Anderson*, 496 F.2d 793, 799 (3d Cir. 1974)).

Diaz contends that he was in custody, and thus was entitled to a *Miranda* warning, because Sergeant Conway's "disabling [of the Explorer] by puncturing the tires . . . [was] the functional equivalent of an arrest." Appellant's Br. at 15. That argument fails. As

10

discussed above, the stop of the Explorer and questioning of Diaz was a *Terry* investigatory stop based on reasonable suspicion. Had Diaz been able to produce a driver's license and registration, had he been able to give a plausible explanation for his whereabouts, had he not matched the description of the suspect from the radio call, had he not appeared out of breath and nervous, and had he not been identified as one of the assailants by Prout, then he would have been free to leave, despite the flattened tire. [3] Diaz was placed in custody only after this additional information gave the police probable cause to arrest him. While the flattened tire may have prevented Diaz from fleeing, he was not in custody because of it.

In short, Sergeant Conway's stop of the Explorer driven by Diaz was a *Terry* investigatory stop, and the prior disabling of the vehicle did not – under these circumstances – convert the encounter into a custodial interrogation. Thus, no *Miranda* warning was required.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of conviction entered by the District Court.

---

[3] When and how he may have chosen to deal with the flat tire is not a matter about which we choose to speculate. Likewise, because it is irrelevant to the issues before us, we make no comment whatsoever on the lawfulness or wisdom of the police officer's decision to puncture the tire.